UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | |
|---|---|
| **DIANA REYNOLDS** | **CASE NO. 2:22-CV-04905** |
| **VERSUS** | **JUDGE TERRY A. DOUGHTY** |
| **BANKERS INSURANCE CO** | **MAG. JUDGE DAVID J. AYO** |

<u>**MEMORANDUM RULING**</u>

Before the Court is a Motion for Summary Judgment filed by the Defendant Bankers Insurance Company ("Bankers") [Doc. No. 82]. Plaintiff Diana Reynolds ("Reynolds") filed an Opposition to the Motion. [Doc. No. 93], and Bankers filed a Reply [Doc. No. 96].

For the reasons stated below, Bankers' Motion is **GRANTED**.

I.      **FACTS AND PROCEDURAL HISTORY**

Nature can be beautiful, and many admire it. However, even the most attractive aspects of nature can quickly turn into disasters. This case involves three separate natural disasters, including two hurricanes and a flood, all within less than a year.

Reynolds held an National Flood Insurance Program Standard Flood Insurance Policy ("SFIP") issued by Bankers, covering Reynolds' property located at 3001 N. General Wainwright Drive, Lake Charles, Louisiana.[1] This policy was in full

---

[1] [Doc. No. 82-1, p. 5].

1

force and effect when three disasters struck her: Hurricane Laura on August 27, 2020, Hurricane Delta on October 9, 2020, and finally the flooding of May 17, 2021.[2]

Reynolds alleges that Bankers breached her SFIP by failing to pay sufficient flood benefits for flood damages to the property resulting from Hurricane Delta on October 9, 2020 and from a second flood that occurred on May 17, 2021.[3] Reynolds also asserts other contractual claims for bad faith, attorney's fees, expenses, pre-judgment and post-judgment interest and all other relief Reynolds allowed by law.[4]

On October 9, 2020, Hurricane Delta made landfall in the Lake Charles area, which caused additional damage to Reynolds' home.[5] Reynolds maintained her flood insurance with Bankers at the time. Reynolds filed a flood claim with Bankers for her damages caused by Hurricane Delta.[6] Bankers acknowledged the flood claim and assigned the loss to an independent adjuster, pursuant to Article VII(J)(7) of the SFIP.[7]

The independent adjuster inspected Reynolds' property and noted that the property had undergone extensive damage due to wind by Hurricane Laura on August 27, 2020, and Reynolds had not repaired any of that damage prior to the damage sustained from Hurricane Delta.[8] The adjuster determined that the flooding from Hurricane Delta had risen fourteen (14) inches on the exterior and six (6) inches

---

[2] [Doc. No. 82-1, pp. 5, 7].
[3] [Id. at p. 2].
[4] [Id.].
[5] [Doc. No. 16, p. 5].
[6] [Id.].
[7] [Doc. No. 82-2, p. 6].
[8] [Id.].

2

in the interior of the structure.[9] However, because Reynolds had not repaired the damage sustained from Hurricane Laura prior to the impact of Hurricane Delta, the independent adjuster concluded that any compensation for building items previously damaged and left unrepaired would constitute a duplicate payment. As a result, the adjuster recommended and approved payment solely for cleanup and drying services.[10] Bankers reviewed the adjustment and recommendations from the independent adjuster, verified the claim, and determined that the SFIP covered and made payable $6,335.75 for the damage to the structure due to direct physical damage by or from flooding caused by Hurricane Delta.[11] Bankers issued payment for the Hurricane Delta claim on December 22, 2020, and also partially denied all damage from Hurricane Laura since that damage had not been repaired prior to the Hurricane Delta flood and Bankers was not allowed to issue duplicate payment for the prior damage.[12]

Reynolds submitted a second flood loss claim to Bankers for her same property, which was still covered under the same flood policy as the prior flood claim.[13] The new flood loss claim resulted from severe rain that occurred on or about May 17, 2021.[14] Bankers acknowledged that claim as well and assigned the loss to an independent adjuster, pursuant to Article VII(J)(7) of the SFIP.[15] Just as what occurred pursuant to the December claim, the independent adjuster made an

---

[9] [Id.]
[10] [Id.]
[11] [Id.]
[12] [Id.].
[13] [Doc. No. 82-1, p. 7].
[14] [Id.].
[15] [Id.].

inspection and noted that the prior damages from Hurricane Laura and Hurricane Delta had not been repaired prior to the May 17, 2021 flood.[16] Therefore the adjuster determined that any SFIP payment recommended for non-repaired damaged building items would result in a duplicate payment and therefore only allowed for and recommended payment for cleanup and dry out.[17] On August 9, 2021, Bankers then reviewed the adjustment and recommendation from the independent adjuster for the May 17, 2021, flood claim and issued a payment of $3,378.09.[18]

Reynolds initially filed suit on August 26, 2022, and then filed an amended complaint on January 31, 2023.[19] Reynolds brought claims against Bankers in both contract and tort.[20] Reynolds' suit was properly filed in this court on the basis of diversity.[21] On March 13, 2025, Bankers sought summary judgment alleging that Reynolds failed to file her complaint and/or second amended complaint within one year of the written denial of any part of an SFIP claim, Reynolds' breach of contract claims fail as a matter of law, and Reynolds' extra-contractual claims are preempted and barred by federal law. [22] Reynolds opposed the Motion, arguing that her claims were not time-barred, that she provided proper proof of loss, and that Bankers is equitably estopped from asserting its defenses.[23]

The issues have been briefed, and the Court is prepared to rule.

---

[16] [Id.].
[17] [Id.].
[18] [Doc. No. 82-1, p. 8].
[19] [Id. at , pp. 8-9].
[20] [Do. No. 1, p.1] [Doc. No. 16, p. 1].
[21] [Doc. No. 1, p. 1].
[22] [Doc. No. 82-1, pp. 1–2].
[23] [Doc. No. 93, p. 1].

4

## II. LAW AND ANALYSIS

### A. Standard of Review

A court will grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). If the movant meets their initial burden of showing no genuine issue of material fact, "the burden shifts to the nonmoving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial." *Distribuidora Mari Jose, S.A. de C.V. v. Transmaritime, Inc.*, 738 F.3d 703, 706 (5th Cir. 2013) (citation modified). A fact is "material" when proof of its existence or nonexistence would affect the lawsuit's outcome under applicable law in the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In other words, "the mere existence of *some* alleged factual dispute will not defeat an otherwise properly supported motion for summary judgement." *Id*. at 247–48. And a dispute about a material fact is "genuine" only if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party. *Id*.

While courts will "resolve factual controversies in favor of the nonmoving party," an actual controversy exists only "when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air. Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). But summary judgment is appropriate when the evidence is "merely colorable or is not significantly probative." *Cutting Underwater Tech. USA, Inc. v. Eni U.S. Operating Co.*, 671 F.3d 512, 517 (5th Cir. 2012) (citation modified).

Moreover, "a party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence." *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007) (citation modified). Courts "may not make credibility determinations or weigh the evidence" and "must resolve all ambiguities and draw all permissible inferences in favor of the non-moving party." *Total E & P USA Inc. v. Kerr–McGee Oil and Gas Corp.*, 719 F.3d 424, 434 (5th Cir. 2013) (citations omitted).

Finally—and importantly—there can be no genuine dispute as to a material fact when a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof of trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).

### B.   Whether Plaintiff's Claims are Time-Barred

Bankers argues that Reynolds' breach of contract claim should be dismissed as time-barred because Reynolds failed to file this action within one year from the date of the December 22, 2020 partial denial of her October 9, 2020, SFIP flood claim, and her failure to file an action within one year of the August 9, 2021, partial denial of her May 17, 2021 flood claim. Bankers specifically argues that Reynolds' breach of contract claim against it is time-barred under 42 U.S.C. § 4072, which provides in pertinent part that:

> [U]pon the disallowance by the Administrator of any such claim, or upon the refusal of the claimant to accept the amount allowed upon any such claim, the claimant, *within one year after the date of mailing notice of disallowance or partial disallowance* by the Administrator, may institute an action against the Administrator…

6

The SFIP also includes the following provision:

> You may not sue us to recover money under this policy unless you have complied with all requirements of the policy. If you do sue, you must start the suit within one year of the written denial of all or part of the claim…

The one-year limitations period applies to any claim brought under the SFIP and to any dispute arising from the handling of such claim. 44 C.F.R. pt. 61, app. A(1), art. VII(R) ("article VII(R)").

Bankers attached to its Motion a copy of the two letters partially denying Reynolds' insurance claims, dated December 22, 2020, and August 9, 2021. In the December 22, 2020 letter, Bankers notified Reynolds that it was "denying all damages from prior Hurricane Laura, it appears the damages has not been repaired prior to this flood event, therefore, we cannot duplicate payments for the same damage."[24] The August 9, 2021 letter notified Reynolds that her claim was denied "for lack of cooperation in providing a Proof of Loss or documentation detailing damages by food as required by the Standard Flood Insurance Policy, Dwelling form. Denial of any and all amounts, above the undisputed amounts of $3,378.09, in covered Building structural damages, as documented by the Adjuster's, Administrative strategies…"[25] Courts, including the Fifth Circuit, have repeatedly held that letters with similar language constitute "notice[s] of disallowance" that begin the one-year prescriptive period under the National Flood Insurance Act. *See Bateman v. Am. Bankers Ins. Co.*

---

[24] [Doc. No. 82-7, p. 1].
[25] [Doc. No. 82-10, p.1].

*of Fla.*, No. CV 23-6338, 2024 WL 894790 (E.D. La. Mar. 1, 2024), at *2 (Vance, J.) (citing *McInnis v. Liberty Mut. Fire Ins. Co.*, No. 22-30022, 2022 WL 4594609, at *3 (5th Cir. Sept. 30, 2022); *Cohen v. Allstate Ins. Co.*, 924 F.3d 776, 781 (5th Cir. 2019)); *Verret v. Safeco Ins. Co. of Am.*, No. 23-2292, 2023 WL 5608018 (E.D. La. Aug. 30, 2023) (Brown, J.).

Bankers avers that the first denial letter sent on December 22, 2020, regarding the October 9, 2020, flood claim, began the one-year prescriptive period for that claim. Thus, the deadline for filing suit was December 22, 2021. The second denial letter sent on August 9, 2021, regarding the May 17, 2021, flood claim began the one-year prescriptive period for that claim. Thus making the deadline for filing suit August 9, 2022. Bankers further argues that, since the original complaint was filed on August 26, 2022, and the Second Amended Complaint was filed on January 31, 2023, Reynolds missed the one-year prescriptive period and therefore the case is time-barred.

In Opposition, Reynolds argues that "the original suit filed in 2022, and the amended complaint filed in 2023, were not prescribed by the denial letters. Reynolds claim for Hurricane Delta flooding explicitly addresses items not associated with the December 2020 denial letter, Reynolds's May 17, 2021, flooding damages are solely related to contents."[26] Reynolds further argues that her claims are valid "based on the ambiguity in the denial letters of December 22, 2020, and August 9, 2021."[27]

---

[26] [Doc. No. 93-1, p. 4].
[27] [Id.].

8

The Court has reviewed the denial letters and finds that they are not ambiguous. The letters are clear partial denial letters and were proper disallowances that triggered the one-year limitation period. Bankers' decisions not to cover part of Reynolds' claims—because the damage from Hurricane Laura had not been repaired before the damage caused by Hurricane Delta and the May 17, 2021, flood—were clearly explained in letters dated December 22, 2020, and August 9, 2021. These letters also included instructions on how to appeal the decision, making them sufficient written partial denial letters that triggered the one-year limitation period under § 4072.[28] And because Reynolds filed suit more than a year after receiving both denial letters, her claims are time-barred.

Reynolds' arguments in Opposition are unpersuasive. She argues that both denial letters were "ambiguous."[29] But the Court rejects this argument. The December 22, 2020, denial letter specifically states that all damage sustained from Hurricane Laura that had not been repaired prior to the damage from Hurricane Delta were denied due to double payment.

Reynolds next argues that both the December 22, 2020, and August 9, 2021, denial letters are insufficient because they do not comply with the NFIP denials, as outlined by *Choen v. Allstate Insurance Company*, 2018 WL 1144761 at *1 (S.D. Tex. 2018). Reynolds claims that the denial letters fail to specifically detail and/or erroneously state the date of loss, the date(s) of payment requests, the items denied coverage, and a "plain language" explanation for non-coverage and/or non-payment.

---

[28] [Doc. No. 82-7, p.3] [Doc. No. 82-10, p. 2].
[29] [Doc. No. 93, pg. 5].

9

There are several problems with Reynolds' position. First, both denial letters include the date of loss. Second, Reynolds' position lacks legal support. She cites no authority suggesting that a failure to comply with Federal Emergency Management Agency ("FEMA") Bulletin W-17013a or the NFIP Claims Manual renders a denial letter insufficient to trigger § 4072's one-year prescription period—and the Court can find none. *Palmer v. Selective Ins. Co., Inc.*, CV 24-1599, 2024 WL 5126265 (E.D. Pa. Dec. 16, 2024) at *5 n.6 (noting Plaintiffs "fail[ed] to cite any authority for the proposition that a letter must comply with the manual's requirements to trigger the SFIP statute of limitations"). What's more, the statute only requires a disallowance or a partial disallowance of a claim. 42 U.S.C. § 4072. As discussed above, the December 22, 2020, and August 9, 2021 letters accomplished this purpose because they put Reynolds on notice that part of her claims had been disallowed. *See 4922 Mgmt. LLC v. Selective Ins. Co. of the Se., No. 2:24-cv-894-SPC-NPM,* 2025 U.S. Dist. LEXIS 21173, 2025 WL 417701, at *2; *see also McInnis v. Liberty Mut. Fire Ins. Co.*, No. 22-30022, 2022 U.S. App. LEXIS 27459, 2022 WL 4594609, at *3 (5th Cir. Sept. 30, 2022) ("[T]he November 2016 letter here plainly put [the Plaintiff] on notice that a part of her claim had been disallowed."). In other words, even if the December 22, 2020, and August 9, 2021, denial letters did not adhere to the bulletin or the claims manual, it does not mean they were deficient under § 4072. Because Reynolds failed to file suit within one year of the December 22, 2020, partial denial of her October 9, 2020, SFIP flood claim and within one year of the August 9, 2021, denial of Reynolds's May 17, 2021, flood claim, her claims are time-barred and must be dismissed.

### C. Proof of Loss

Alternatively, even if the Reynolds' claims were not time-barred, her claims fail due to her failure to submit proper proof of loss.

Congress created the National Flood Insurance Program to provide flood insurance coverage at affordable rates. *Marseilles Homeowners Condo. Ass'n v. Fidelity Nat'l Ins. Co.*, 542 F.3d 1053, 1054 (5th Cir. 2008). The Program, which is operated by FEMA, draws funds from the federal treasury. *Id.* Homeowners can purchase an SFIP policy directly from FEMA or through private insurers, which serve as WYO providers and are fiscal agents of the United States. *Id.*; *see* 42 U.S.C. § 4071(a)(1). "An SFIP is 'a regulation of [FEMA], stating the conditions under which federal flood-insurance funds may be disbursed to eligible policyholders.'" *Marseilles*, 542 F.3d at 1054 (altered in original) (quoting *Mancini v. Redland Ins. Co.*, 248 F.3d 729, 733 (8th Cir. 2001)).

Because the NFIP puts the government's liability at stake, its regulations implicate sovereign immunity. *DeCosta v. Allstate Ins. Co.*, 730 F.3d 76, 84 (1st Cir. 2013). Although Write-Your-Own ("WYO") insurers administer SFIP policies, payments made pursuant to such policies are "a direct charge on the public treasury." *Gowland v. Aetna*, 143 F.3d 951, 955 (5th Cir. 1998) (quoting *In re Estate of Lee*, 812 F.2d 253, 256 (5th Cir. 1981)). Therefore, "the provisions of an insurance policy issued pursuant to a federal program must be strictly construed and enforced." *Id.* at 954; *accord DeCosta*, 730 F.3d at 84; *Mancini*, 248 F.3d at 734–35.

The issue in this case is the interpretation of the proof-of-loss requirement in Article VII of the SFIP. The regulation reads as follows:

In case of a flood loss to insured property, you must:

> 4. Within 60 days after the loss, send us a proof of loss, which is your statement of the amount you are claiming under the policy, *signed and sworn to by you*, and which furnishes us with the following information:
>    a. The date and time of loss;
>    b. A brief explanation of how the loss happened;
>    c. Your interest (for example, "owner") and the interest, if any, of others in the damaged property;
>    d. Details of any other insurance that may cover the loss;
>    e. Changes in title or occupancy of the covered property during the term of the policy;
>    f. Specifications of damaged buildings and detailed repair estimates;
>    g. Names of mortgagees or anyone else having a lien, charge, or claim against the insured property;
>    h. Details about who occupied any insured building at the time of the loss and for what purpose; and
>      i. The inventory of damaged personal property. . .

44 C.F.R. pt. 61, app. A(1) art. VII(J) (emphasis added).

The regulations require strict compliance with the proof-of-loss requirement as a condition precedent to filing a suit. The regulation further provides:

> *You may not sue us* to recover money under this policy unless you have complied with all the requirements of the policy. . . This requirement applies to any claim that you may have under this policy and to any dispute that you may have arising out of the handling of any claim under the policy.

44 C.F.R. pt. 61, app. A(1) art. VII(R) (emphasis added). As the Fifth Circuit held, "an insured's failure to provide a complete, sworn proof of loss statement, as required by

12

the flood insurance policy, relieves the federal insurer's obligation to pay what otherwise might be a valid claim." *Gowland*, 143 F.3d at 954.

FEMA regulations expressly allow for the acceptance of an adjuster's report in lieu of a sworn proof of loss under certain circumstances. 44 C.F.R. § 61.13(d).; 44 C.F.R. Pt. 61, App. A(1), Art. VII(J)(9). Reynolds was required to submit proof of loss within 60 days of the loss. Therefore, Reynolds was required to submit the proof of loss on or before December 8, 2020, for the October 9, 2020, claim and on or before July 16, 2021, for the May 17, 2021, flood loss.

Reynolds argues that she provided sufficient documentation by way of the adjusters' narrative reports for both the October 9, 2020, and May 17, 2021, claims. She contends that the Bankers' own denial letter for the May 17, 2021, flood explicitly states: "At our option, we may accept the adjuster's report of the loss instead of your proof of loss."[30] Reynolds further argues that the Bankers' adjuster was able to determine and document specific amounts of covered damages, which evidences that Reynolds provided the necessary documentation to satisfy this requirement."[31]

The issue with Reynolds' argument is that she leaves out a crucial sentence that is included in the denial letter she is referencing, which is also found in 44 C.F.R. Pt. 61, App. A(1), Art. VII(J)(9):

> "At our option, we may accept the adjuster's report of loss. The adjuster's report will include information about your loss and the damages you sustained. **You must sign the adjuster's report**. At our option, we may require you to swear to the report."

---

[30] [Doc. No. 93-1, p. 7].
[31] [*Id.*].

13

Reynolds fails to mention that the adjusters' reports must be *signed* for it to be sufficient proof of loss. Nothing in the record suggests or shows that Reynolds signed either adjuster's reports. Since the courts strictly construe the SFIP's requirements, the Court rejects Reynolds' argument that simply providing the Bankers with the adjusters' report of loss without signing satisfied the condition precedent to suit. Merely submitting the adjuster's report without signing it is not sufficient proof of loss. *Ferraro v. Liberty Mut. Fire Ins. Co.*, 796 F.3d 529, 532 (5th Cir. 2015).

An insured's failure to strictly comply with the SFIP's provision—including the proof of loss requirement—relieves the federal insurer's obligation to pay the non-compliant claim. Because Reynolds's adjuster's reports for October 9, 2020, and May 17, 2021, claims were not signed, neither can serve as proof of loss under the plain terms of the SFIP.

Thus, the Court finds that there are no genuine issues of material fact for trial regarding whether Reynolds submitted sufficient proof of loss under the SFIP.

### D. Equitable Estoppel

The Fifth Circuit has held that all extra-contractual claims arising out of the handling of the flood loss claim are preempted and barred by federal constitutional, statutory, and regulatory law. *Wright v. Allstate Ins. Co.*, 415 F.3d 384 (5th Cir. 2005), and *Gallup v. Omaha Prop. & Cas. Ins. Co.*, 434 F.3d 341, 345 (5th Cir. 2005). The Fifth Circuit has also held that extra-contractual claims raised under "federal common law" were also barred. *Wright*, 500 F.3d at 398.

Reynolds also asserts extra-contractual claims for general, special, and punitive damages under Louisiana state law, attorney's fees, expenses, prejudgment and post-judgment interest, and all other relief. Reynolds did not address the Bankers' argument that her extra-contractual claims are preempted and barred by federal law.

Accordingly, Reynolds has not presented factual issues that raise a genuine issue for trial on these claims, and Bankers is entitled to summary judgment on these claims. Based on *Wright*, the Court holds that Reynolds' extra-contractual claims are dismissed as they are preempted and barred by federal law.

### III.   CONCLUSION

For the reasons stated above,

**IT IS ORDERED** that Bankers' Motion [Doc. No. 93] is **GRANTED**, and Reynolds' claims are **DISMISSED WITH PREJUDICE**.

MONROE, LOUISIANA, this 2nd day of September, 2025.

_____
Terry A. Doughty
United States District Judge